**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| AUBRIS RESOURCES, LP, FKA UNITED | § | |
| RESOURCES, L.P., ITSELF FKA | § | |
| UNITED OIL & MINERAL, L.P., | § | |
| | § | |
| Plaintiff, | § | Civil Action |
| | § | No. C-06-539 |
| v. | § | |
| | § | |
| ST. PAUL FIRE AND MARINE | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On this day came on to be considered Plaintiff Aubris Resources, LP, formerly known as United Resources, L.P., itself formerly known as United Oil & Mineral, L.P.'s (hereinafter, "United") first amended motion for partial summary judgment in the above-styled action (D.E. 28).[1]  In this motion, United seeks reimbursement from Defendant St. Paul Fire and Marine Ins. Co. (hereinafter, "St. Paul") for United's costs of defense in an

---

[1] Of note, on May 21, 2007, United filed its "Motion for Partial Summary Judgment" in this case (D.E. 21).  United later filed a motion to supplement this motion for partial summary judgment with additional exhibits (D.E. 22).  The Court DENIED United's motion to supplement, as the General Order in this case indicates that parties may not file "supplemental pleadings." (D.E. 27).  United accordingly filed its first amended motion for partial summary judgment that is currently before the Court (D.E. 28).  In this amended motion, United includes the additional exhibits it sought to add via its motion to supplement, and United clarifies the relief it seeks from the Court.  (Id.).  In this Order, the Court only considers United's first amended motion for partial summary judgment (D.E. 28).  United's initial motion for partial summary judgment (D.E. 21) has been superseded by United's later amended motion (D.E. 28), and accordingly United's initial motion for partial summary judgment is MOOT.

underlying Texas state court lawsuit, from January, 2006 through at least July 27, 2006.[2]   United also seeks attorney's fees and interest and penalties incurred in bringing the instant case, pursuant to various sections of the Texas Civil Practice & Remedies Code and the Texas Insurance Code.   For the reasons set forth below, United's first amended motion for partial summary judgment is hereby DENIED.

## I.   <u>Jurisdiction</u>

The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as United and St. Paul are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## II.   <u>Factual Background</u>

The following facts are not in dispute: On April 10, 2002, United entered into an Oilfield Services Term Agreement (hereinafter, "Agreement" of "United-J&R Valley Agreement") with J&R Valley Oilfield Services, Inc. ("J&R Valley").   (PX-A[3], Agreement).   On October 20, 2003, while the Agreement was still in

---

[2]As discussed in greater detail below, United's motion only seeks "partial" relief because United seeks reimbursement for defense costs for a specific limited time frame.   United has indicated that it may urge a second motion for partial summary judgment in the future, seeking reimbursement for defense costs for a time period other than that covered in the instant motion before the Court.

[3]For ease of reference, United's exhibits are referred to with the designation "PX," and St. Paul's exhibits are referred to with the designation "DX."

effect, there was an explosion at a well site on an oilfield leased by United. (PX-D, Plaintiffs' First Amended Petition, ¶ 4.1). A J&R Valley employee, Ernesto Garza, was severely injured in the explosion and ultimately died from his injuries. (Id.). Another J&R Valley employee, Carlos Figueroa, was also injured in the explosion, but he did not die from his injuries. (PX-D, Plea in Intervention, ¶ 2.1).

On November 5, 2003, Concepcion Garza, on her own behalf, as next friend of her minor children, and as representative of the Estate of Ernesto Garza, sued United and J&R Valley in Texas state court, Hidalgo County. See Concepcion Garza, et al. v. United Resources, L.P., et al., District Court for the 275th Judicial District of Hidalgo County, Texas, Cause No. C-2840-03-E. Carlos Figueroa and his wife Evangelina Figueroa intervened in the lawsuit, seeking damages for Mr. Figueroa's personal injuries. (Id.). The parents of the decedent Ernesto Garza, Mario and Amanda Garza, also intervened for damages resulting from the death of their son. (Id.).

The parties in the underlying Texas state court lawsuit have made several amendments to their pleadings. In the main action, Plaintiffs initially sued United and J&R Valley, claiming negligence against United and gross negligence against J&R Valley. (PX-D, Plaintiffs' First Amended Petition, ¶¶ 5.1-5.2). The Plaintiffs have since amended their pleadings to add negligence

claims against various other Defendants, including R&R Gauging Service, Inc., OCI, Inc. and El Paso Oil & Gas, Inc. (PX-D, Plaintiffs'/Intervenors' First Amended Petition, ¶¶ II, V). Pursuant to a settlement agreement, the Plaintiffs non-suited J&R Valley, and J&R Valley was dismissed from the case with prejudice on December 19, 2005. (DX-A, Order of Non-Suit with Prejudice as to Defendant J&R Valley).

With regard to the Intervenors (Carlos and Evangelina Figueroa and Mario and Amanda Garza), throughout their various amended pleadings, they consistently assert a negligence claim against United, and they do not allege any claims against J&R Valley.[4] (PX-D, Various Pleas in Intervention).

At the time of the incident in question, J&R Valley had a Commercial General Liability ("CGL") insurance policy with St. Paul (hereinafter, the "St. Paul Policy"). (PX-B, St. Paul Policy, Policy No. VK04200186). On December 22, 2005, United made a formal demand for coverage from St. Paul under the policy, claiming that as an additional insured, United was entitled to a defense and indemnity in the _Garza_ litigation.[5] (PX-E, December 22, 2005

---

[4]The later amended pleadings of the Intervenors do add negligence claims against various other parties. These later amended pleadings consistently continue to name United as a Defendant, and even in their later pleadings, the Intervenors do not assert claims against J&R Valley. (PX-D and PX-F, Various Pleas in Intervention).

[5]United made a previous letter demand to St. Paul for coverage on November 10, 2005. (PX-E, November 10, 2005 Letter from D. Green to W. Pierson) (stating, "please consider this

Letter from D. Green to St. Paul) (stating that United "reiterates its demand from St. Paul for defense and indemnity in this matter."). St. Paul denied United's request for a defense and indemnity. (PX-E, February 8, 2006 Letter from W. Pierson to D. Green and May 31, 2006 Letter from W. Pierson and E. Barrera to D. Green).

United has brought suit against St. Paul, claiming that St. Paul owes United a defense and indemnity under the above-referenced policy as an "additional insured." (D.E. 17, First Amended Original Complaint). St. Paul disputes this claim by United. (D.E. 20, St. Paul Answer).

## III. **Procedural Background**

### A. **Original and First Amended Original Complaints**

United filed its Original Complaint against St. Paul and National Union Fire Insurance Company of Pittsburgh ("National Union") on December 5, 2006 (D.E. 1). United sought a declaratory judgment that St. Paul, or National Union as the excess carrier, was obligated to provide a defense and indemnity to United in the underlying Texas state court lawsuit. (Original Complaint, ¶¶ 9-

---

letter a reiteration of our demand upon St. Paul to provide a defense and indemnity for the benefit of 'United' ... pursuant to the terms of the CGL policy and as required by the terms of the Oilfield Services agreement between J&R and United."). However, in its first amended motion for partial summary judgment, United urges the use of the December 22, 2005 date as the date of its formal demand for a defense and indemnity from St. Paul. (Motion, pp. 3-4). The date of the formal demand is not relevant to the outcome of United's motion before the Court.

10).  United also brought claims against St. Paul pursuant to the Texas Insurance Code, seeking statutory damages and attorney's fees.  (Id., ¶¶ 11-13).

United filed its First Amended Original Complaint ("Amended Complaint"), still naming both St. Paul and National Union as Defendants, on January 29, 2007 (D.E. 17).  In its Amended Complaint, United seeks a declaratory judgment that St. Paul is obligated to "provide a defense to United for the duration of the pending underlying claims", and that St. Paul must indemnify United upon any settlement or trial.  (Amended Complaint, ¶¶ 10-11). United also brings a claim for equitable subrogation against St. Paul, as well as claims against St. Paul for violations of the Texas Insurance Code.  (Id., ¶¶ 12-14).  In its Amended Complaint, United does not bring any claims against National Union.

**B.   Dismissal of National Union**

On January 29, 2007, United filed a notice of voluntary dismissal of National Union, pursuant to Federal Rule of Civil Procedure 41(a) (D.E. 18).  The Court GRANTED United's notice of voluntary dismissal on January 29, 2007 (D.E. 19).  National Union was accordingly DISMISSED from the case, without prejudice.  (Id.).

**C.   United's First Amended Motion for Partial Summary Judgment**

On June 13, 2007, United filed its first amended motion for

partial summary judgment in this case (D.E. 28).[6]  In its motion, United seeks reimbursement from St. Paul for United's costs of defense in the underlying <u>Garza</u> litigation, from January, 2006 through at least July 27, 2006.  United classifies the motion before the Court as a motion for "<u>partial</u>" summary judgment, because United only seeks reimbursement for defense costs for a certain time frame.  United indicates that it may urge a second motion for "partial" summary judgment in the future, if St. Paul continues to deny United a defense and indemnity in the <u>Garza</u> litigation.  United indicates that any such "second" motion for partial summary judgment would seek reimbursement for defense costs for a time frame other than from January, 2006 through at least July, 2006.

In its first amended motion for partial summary judgment before the Court, United also seeks the attorney's fees that it has incurred in bringing the instant case, pursuant to Texas Civil Practice and Remedies Code §§ 37.009 and 38.001 and Texas Insurance Code §§ 541.152 and 542.060.  United seeks such attorney's fees that it has incurred "to date" in bringing and prosecuting the instant case before the Court.  United also seeks statutory

---

[6]As noted above, United had previously filed a motion for partial summary judgment in the case (D.E. 21), but that motion was later superseded by United's first amended motion for partial summary judgment (D.E. 28).  United's initial motion for partial summary judgment is MOOT, and this Order only considers United's first amended motion that is currently before the Court.

interest under Section 542.060 of the Texas Insurance Code.

United's main argument in the motion before the Court is that under the terms of the United-J&R Valley Agreement, United is an "additional insured" that is covered under the St. Paul Policy. Specifically, United argues that the additional insured language of the Agreement does not contain any exclusion on coverage that would apply in this situation.  United has submitted evidence in support of its motion, including a copy of the St. Paul Policy, copies of the Garza litigation pleadings, and a copy of the United-J&R Valley Agreement.  (See D.E. 28, PX-A through PX-F).[7]

St. Paul filed its response to United's first amended motion for partial summary judgment on July 2, 2007 (D.E. 30).[8]  St. Paul argues that under the language of the additional insured section of the United-J&R Valley Agreement, United is not covered as an "additional insured" for the claims brought against United in the

---

[7]United also filed a reply brief in support of its first amended motion for partial summary judgment (D.E. 31).  United did not file a motion seeking permission to file its reply brief, as is required by the Court's Scheduling Order in this case.  (D.E. 16, Scheduling Order, ¶ 4 ("No reply to the opposition to a motion will be filed by movant without leave of Court on good cause")).  However, in the interests of justice, the Court will treat United's reply as if United had filed the required motion for leave to file a reply brief, and the Court will consider the arguments in United's reply.

[8]Of note, St. Paul had previously filed a response to United's initial motion for partial summary judgment (D.E. 29, responding to D.E. 21).  As United's initial motion for partial summary judgment is MOOT (as it was superseded by the motion before the Court), the Court has only considered St. Paul's response to United's first amended motion for partial summary judgment.  (D.E. 30, responding to D.E. 28).

_Garza_ litigation.   St. Paul argues that since United is not an additional insured, St. Paul does not owe United a defense or indemnity under the St. Paul Policy.   St. Paul has submitted evidence in support of its response, in the form of a Texas state court order dismissing J&R Valley from the _Garza_ litigation. (_See_ D.E. 30, DX-A).

## IV.   **Discussion**

### A.   **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."   Fed. R. Civ. P. 56(c).   The substantive law identifies which facts are material.   _See_ _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248 (1986); _Ellison v. Software Spectrum, Inc._, 85 F.3d 187, 189 (5th Cir. 1996).   A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." _Anderson_, 477 U.S. at 248; _see also_ _Judwin Props., Inc., v. U.S. Fire Ins. Co._, 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material

fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Wallace v. Texas Tech. Univ.</u>, 80 F.3d 1042, 1046-1047 (5th Cir. 1996).  If the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case.  <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 325; <u>Ocean Energy II, Inc. v. Alexander & Alexander, Inc.</u>, 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." <u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 270 (1968); <u>see</u> <u>also</u> <u>Schaefer v. Gulf Coast Reg'l Blood Ctr.</u>, 10 F.3d 327, 330 (5th Cir. 1994) (stating that nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue).

When the parties have submitted evidence of conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Willis</u>, 61 F.3d at 315.  Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party.  <u>See</u>, <u>e.g.</u>, <u>Rubinstein v. Adm'rs of the Tulane Educ. Fund</u>, 218 F.3d 392, 399 (5th Cir. 2000).

**B.    Insurance Contract Interpretation**

This case involves interpretation of the St. Paul Policy and certain relevant provisions of the United-J&R Valley Agreement.

A district court's interpretation of an insurance contract is a question of law. See Principal Health Care of La., Inc. v. Lewer Agency, Inc., 38 F.3d 240, 242 (5th Cir. 1994); F.D.I.C. v. Mijalis, 15 F.3d 1314, 1319 (5th Cir. 1994). Texas rules of contract interpretation control in a diversity case. See Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co., 99 F.3d 695, 700 (5th Cir. 1996); Amica Mut. Ins. Co. v. Moak, 55 F.3d 1093, 1095 (5th Cir. 1995) ("[i]nsurance policies are contracts and are governed by the principles of interpretation applicable to contracts ... [s]tate law rules of construction govern in diversity cases."). Under Texas law, the interpretation of insurance contracts is governed by the same rules that apply to contracts generally. See Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995).

In determining the scope of coverage, courts "examine the policy as a whole to ascertain the true intent of the parties." Utica Nat'l Ins. Co. Of Texas v. Am. Indemnity Co., 141 S.W.3d 198, 202 (Tex. 2004); see also Nat'l Union v. CBI Indus., 907 S.W.2d at 520 ("The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as

expressed in the instrument."); <u>Mid-Century Ins. Co. of Texas v. Lindsey</u>, 997 S.W.2d 153, 158 (Tex. 1999); <u>Forbau</u>, 876 S.W.2d at 133; <u>Barrett v. Aetna Life Ins. Co.</u>, 723 S.W.2d 663, 666 (Tex. 1987).  The contract must also be "considered as a whole ... [and] each part of the contract should be given effect."  <u>Forbau</u>, 876 S.W.2d at 133; <u>see also</u> <u>Barrett</u>, 723 S.W.2d at 666.  When policy terms are clear and unambiguous, the terms in an insurance policy must be given their plain and ordinary meaning.  <u>See</u> <u>Nat'l Union Fire Ins. Co. v. CNA Ins. Co.</u>, 28 F.3d 29, 32 (5th Cir. 1994) ("[w]hen the terms of an insurance policy are plain, definite, and unambiguous, a court may not vary those terms"); <u>Barnett</u>, 723 S.W.2d at 665 ("If the insurance contract is expressed in plain and unambiguous language, a court cannot resort to the various rules of construction.").

C.   **United is Not an "Additional Insured" with Respect to the Claims against United in the Underlying *Garza* Litigation**

The threshold question in this case is whether United is considered an "additional insured" under the St. Paul Policy, for the purposes of United's claim for a defense and indemnity in the <u>Garza</u> litigation.  As set forth below, under the plain language of the United-J&R Valley Agreement, United is not an "additional insured" under the St. Paul Policy with respect to the claims against United in the underlying <u>Garza</u> case.

1.   **The "Additional Insured" Section of the Agreement**

Section 10.1 of the United-J&R Valley Agreement indicates that at all times during the pendency of the Agreement, J&R must carry insurance with an insurance company that is satisfactory to United. (PX-A, Agreement, ¶ 10.1).   Such insurance must include "Commercial/Comprehensive General Liability Insurance on an occurrence basis ... with a combined single limit of not less than $2,000,000 covering personal injury (including bodily injury) and property damage." (Id., ¶ 10.1(c)).  As noted above, J&R Valley purchased a CGL policy from St. Paul, Policy No. VK04200186.  It is undisputed that this policy was in effect on October 20, 2003, when the accident occurred that gave rise to the underlying Garza litigation.  (PX-B, St. Paul Policy).

Section 10.2 of the United-J&R Valley Agreement addresses the issue of "Additional Insureds" under J&R's various insurance policies.  Section 10.2 states as follows:

> Additional Insureds.   UNITED and its subsidiaries, affiliated companies, co-owners, partners and joint venturers (if any), and their respective members, managers, officers, directors, agents, and employees shall be named as additional insureds in each of [J&R Valley's] policies, except Workers' Compensation; ***however, such extension of coverage shall not apply with respect to any obligations for which UNITED has specifically agreed to indemnify [J&R Valley].***

(Id., ¶ 10.2) (emphasis added).  United claims that pursuant to Section 10.2, that United is considered an "additional insured" under the St. Paul Policy, and that St. Paul owes United a defense

and indemnity for the claims against United in the <u>Garza</u> case.

**2.   The Indemnity Sections of the Agreement**

As referenced above, Section 10.2 provides that United shall be named as an additional insured in J&R's various insurance policies, except "with respect to any obligations for which UNITED has specifically agreed to indemnify [J&R Valley]." (<u>Id.</u>, ¶ 10.2). The relevant indemnity provisions of the United-J&R Valley Agreement are set forth below:

11.   <u>INDEMNITY</u>:

11.1.   <u>GENERAL INDEMNITY</u>.
   a.   [J&R VALLEY] SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS UNITED AND ITS SUBSIDIARIES, AFFILIATED COMPANIES, CO-OWNERS, PARTNERS AND JOINT VENTURERS (IF ANY), AND THEIR RESPECTIVE MEMBERS, MANAGERS, OFFICERS, DIRECTORS, AGENTS, AND EMPLOYEES FROM AND AGAINST ALL CLAIMS, DEMANDS, AND CAUSES OF ACTION ASSERTED BY ANY PARTY (INCLUDING, BUT NOT LIMITED TO, EMPLOYEES OF [J&R VALLEY] AND UNITED) THAT ARISE OUT OF OR ARE RELATED TO WORK AND ARE CAUSED BY OR ARISE OUT OF [J&R VALLEY'S] NEGLIGENT ACTS OR OMISSIONS OR WILLFUL MISCONDUCT AND RESULT IN PERSONAL INJURY (INCLUDING BODILY INJURY), ILLNESS, DEATH OR PROPERTY LOSS OR DAMAGE, OR ANY CIVIL FINES OR PENALTIES IMPOSED BY ANY GOVERNMENTAL AGENCY, OFFICER, OR COURT OF LAW. ...

   b.   ***UNITED SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS [J&R VALLEY]*** AND ITS OFFICERS, DIRECTORS, AGENTS, AND EMPLOYEES FROM AND ***AGAINST ALL CLAIMS, DEMANDS, AND CAUSES OF ACTION*** ASSERTED BY ANY PERSON (INCLUDING BUT NOT LIMITED TO EMPLOYEES OF [J&R VALLEY] AND UNITED) ***THAT ARISE OUT OF OR ARE RELATED TO WORK AND ARE CAUSED BY OR ARISE OUT OF UNITED'S NEGLIGENT ACTS OR OMISSIONS,*** OR WILLFUL MISCONDUCT AND RESULT IN PERSONAL INJURY (INCLUDING BODILY INJURY), ILLNESS, DEATH OR PROPERTY LOSS OR DAMAGE, OR ANY CIVIL FINES OR PENALTIES IMPOSED BY ANY GOVERNMENTAL AGENCY,

OFFICER, OR COURT OF LAW,  ...

    c.    ***IF A CLAIM OR CAUSE OF ACTION*** OF THE NATURE DESCRIBED IN SUBPARAGRAPHS 11.1(a) OR 11.1(b) OF THIS AGREEMENT ***ARISES OUT OF THE JOINT OR CONCURRENT NEGLIGENT ACTS OR OMISSIONS OR WILLFUL MISCONDUCT OF [J&R VALLEY] AND UNITED, IT IS THE EXPRESS INTENT OF THE PARTIES THAT EACH OF THEM SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS THE OTHER TO THE EXTENT OF THE INDEMNIFYING PARTY'S NEGLIGENT ACTS OR OMISSIONS*** OR WILLFUL MISCONDUCT.

(<u>Id.</u>, ¶ 11.1(a)-(c)) (emphasis added).[9]

---

[9]The Court notes that United cites the case of <u>Getty Oil Co. v. Ins. Co. of N. Am.</u>, 845 S.W.2d 794 (Tex. 1993) in support of its argument that the indemnity provisions of the Agreement (Section 11.1) are completely separate from the additional insured section of the Agreement (Section 10.2).  (Reply, pp. 3-4).  This argument is unpersuasive, as the <u>Getty Oil</u> case is fundamentally different from the case at bar.  The issue in <u>Getty Oil</u> was whether the additional insured provision of the agreement implicated the Texas Oilfield Anti-Indemnity Statute, Tex. Civ. Prac. & Rem. Code Sections 127.001 - 127.007.  The Texas Supreme Court did not express any opinion as to whether Getty was an additional insured, but found that the additional insured provision of the contract was a "separate obligation" from the indemnity provision of the contract.  <u>Id.</u> at 804.  The court therefore found that "[t]he additional insured provision, which does not support an indemnity agreement, is not prohibited by the language of the Anti-Indemnity Statute." <u>Id.</u>  The language of the additional insured and indemnity provisions of the contract in the <u>Getty Oil</u> case are printed in the text of the opinion. <u>See</u> <u>id.</u> at 797.  Significantly, the additional insured coverage section of the contract in <u>Getty Oil</u> is <u>not</u> limited by reference to the contract's indemnity provisions.  Rather, the additional insured provision in <u>Getty Oil</u> does not include <u>any</u> reference whatsoever to the indemnity provision(s) of the contract.  This is in direct contrast to the instant case, where the additional insured coverage itself is specifically limited by the indemnity provisions of the Agreement.  (PX-A, Agreement, Section 10.2). <u>Getty Oil</u> is distinguishable from the case at bar, and under the plain language of the Agreement the indemnity provisions are directly implicated in whether or not United is an additional insured covered by the St. Paul Policy.

### 3.  <u>Relevant Sections of the St. Paul Policy</u>

Endorsement No. OG-037 of the St. Paul Policy is entitled "Additional Protected Persons Endorsement - Persons or Organizations Required by Written Contract for Insurance - Oil and Gas Commercial General Liability". (PX-B, St. Paul Policy, Endorsement No. OF-037). The Endorsement states as follows in relevant part:

> The following is added to the Who is Protected Under This Agreement section. This change adds certain protected persons and limits their protection.
>
> **Additional protected persons when required by a written contract for insurance.**[10] Any person or organization that you agree in a written contract for insurance to add as an additional protected person under this agreement is a protected person. But only for covered bodily injury and property damage that results from your work for that person or organization.
>
> Any person or organization that you agree in a written contract for insurance to add as an additional protected person under this agreement is also a protected person for the following if that written contract for insurance specifically requires such coverage for that person or organization:
>
> • covered bodily injury or property damage that results from your completed work for that person or organization;

---

[10]A "written contract for insurance" is defined in the Endorsement as "that part of any written contract or agreement in which you agree to add a person or organization as an additional protected person under this agreement that: was made before; and is in effect when; the bodily injury or property damage happens, or the personal injury offense is committed." (PX-B, St. Paul Policy, Endorsement No. OF-037). The "written contract for insurance" in the instant case is the United-J&R Valley Agreement.

- covered bodily injury or property damage that results from your maintenance, operation, or use of equipment rented or leased from that person or organization;

- covered personal injury that results from your business activities for that person or organization; or

- covered personal injury that results from your business activities of maintenance, operation, or use of equipment rented or leased from that person or organization.

(<u>Id.</u>) (emphasis in original).  The Endorsement also notes that an "*[a]dditional protected person* may also be called an additional insured in the written contract for insurance." (<u>Id.</u>) (emphasis in original).

<b>4.  <u>United Is Not An Additional Insured in the Instant Factual Situation</u></b>

As noted above in the policy language, an entity is only a "protected person" under the policy if J&R Valley "***agree[d] in a written contract for insurance*** to add [the entity] as an additional protected person." (<u>Id.</u>) (emphasis added).  In this case, the "written contract for insurance," the United-J&R Valley Agreement, specifically does <u>not</u> provide additional insured coverage for United for claims or causes of action arising from or related to United's own negligence, because United has specifically agreed to indemnify J&R in such circumstances.

Section 10.2 of the United-J&R Valley Agreement states that United shall be named as an additional insured in J&R Valley's St. Paul Policy, ***except*** that "such extension of coverage ***shall not***

*apply with respect to any obligations for which UNITED has
specifically agreed to indemnify [J&R Valley].*"  (PX-A, Agreement,
¶ 10.2) (emphasis added).  In Section 11.1 of the United-J&R Valley
Agreement, United agrees to indemnify J&R Valley "from and against
all claims, demands, and causes of action asserted by any person
... that are caused by or arise out of United's negligent acts or
omissions."  (Id., ¶ 11.1(b)).  In the event that claims or causes
of action arise out of the joint or concurrent negligent acts or
omissions of J&R Valley and United, United agreed to indemnify J&R
to the extent of United's own negligence.   (Id., ¶ 11.1(c)).
Accordingly, the language of the Agreement is clear:  United is not
entitled to additional insurance coverage for claims where United
has agreed to indemnify J&R Valley, and in the Agreement United
specifically agreed to indemnify J&R Valley for claims/causes of
action arising from United's own negligence.[11]

---

[11]United asks the Court to accept an alternative
interpretation of Sections 10.2 and 11.1 of the United-J&R Valley
Agreement.  Specifically, United claims that Section 10.2 of the
Agreement "simply prevents UNITED from using the ST. PAUL policy
to 'defend' against an 'indemnity' claim by J&R Valley, were one
to be filed."  (Motion, p. 19).  Under Texas law, a court "must
adopt the construction of an exclusionary clause urged by the
insured as long as that construction is not unreasonable, even if
the construction urged by the insurer appears to be more
reasonable or a more accurate reflection of the parties' intent."
Nat'l Union Fire Ins. Co. v. Hudson Energy Co., 811 S.W.2d 552,
555 (Tex. 1991).  However, in this case, United's alternative
explanation is unreasonable, as it does not make sense in terms
of the language of the Agreement.  Section 10.2 addresses
additional insured coverage in general, and plainly states that
such coverage will not apply where United agreed to indemnify St.
Paul.  This provision does not reference any indemnity claim that

United now seeks a defense and indemnity from St. Paul for <u>negligence</u> claims brought against United in the <u>Garza</u> litigation. United even states in its motion for summary judgment that "Plaintiffs [in the <u>Garza</u> litigation] allege that UNITED was negligent for its acts or omissions.  Specifically, [the <u>Garza</u> litigation] Plaintiffs ... state in ... all amended petitions: Defendant United Resources acted or failed to act in such a manner as to constitute negligence that was the proximate cause of Ernesto Garza's injuries and death ...'" (Motion, p. 14, citing PX-D, various Plaintiffs' Petitions in the <u>Garza</u> litigation, ¶ 5.2). <u>See also</u> Motion, p. 15 ("In short, [the <u>Garza</u> litigation] Plaintiffs urge that UNITED was responsible for the injuries and death because they were negligent in connection with the operations which took place at UNITED's well location").  As set forth above, under the plain language of the United-J&R Valley Agreement, United is <u>not</u> an additional insured under the St. Paul Policy for such negligence claims.[12]

---

must be brought by J&R, or defense of any such claim.  It is non-sensical, and therefore unreasonable, to read this provision solely as preventing United from using the St. Paul policy to defend against an indemnity claim by J&R Valley.  To be accepted by the Court, an alternative construction must be <u>reasonable</u>, and United has not satisfied that burden in this case.  <u>See</u> <u>Hudson Energy Co.</u>, 811 S.W.2d at 555.

[12]The Court notes United's reliance on the Texas Supreme Court case of <u>Atofina Petrochemicals, Inc. v. Cont'l Cas. Co.</u>, 185 S.W.3d 440 (Tex. 2005).  Contrary to United's arguments, <u>Atofina</u> is distinguishable from the case at bar, and <u>Atofina</u> does not mandate coverage for United in the instant situation.  In <u>Atofina</u>, Atofina entered into a contract with A&B Builders, by

In sum, under the St. Paul Policy, United is only entitled to additional insured coverage if such coverage is specifically required by the written contract for insurance. Sections 10.2 and 11.1 of the United-J&R Valley Agreement specifically preclude coverage for United for claims arising from United's own negligence. The language of the Agreement and the Policy are clear, and when policy and contract terms are clear and

---

orally accepting A&B's proposal to provide various goods and services. This proposal stated that "A&B Builders, Inc. is pleased to offer our proposal to furnish labor, tools, material, ... equipment, insurance and supervision to complete steel erection for [various buildings]." Id. at 442. This statement regarding furnishment of "insurance" was the only reference in the parties' written agreement regarding the matter of insurance coverage. This is in stark contrast to the case at bar, where the grant of additional insured status was itself limited from the start, such coverage was never granted for obligations where United had agreed to indemnify J&R Valley. This limited coverage contrasts with the very broad grant of coverage provided in Atofina, where A&B simply agreed to "furnish ... insurance" to Atofina, with no listed limitations on coverage. Also of note, in Atofina, the Texas Supreme Court found Atofina's "sole negligence" construction of the policy exclusion regarding acts, errors or omissions of the additional insured to be "reasonable". Id. at 444. Such a "sole negligence" construction would not be a reasonable reading of the language in Section 10.2 of the Agreement regarding situations where United agreed to indemnify J&R Valley. This is because the Agreement itself specifically contemplates a situation where both United and J&R Valley are jointly and concurrently negligent. In such a case, the Agreement provides that United shall indemnify J&R Valley to the extent of United's negligent acts or omissions. United therefore has specifically agreed to indemnify J&R Valley in a situation where both United and J&R Valley are negligent. Accordingly, it would not be a reasonable construction for Section 10.2's limitation on coverage to be limited to cases where United was "solely negligent," since the Agreement specifically provides for indemnity where claims arise from United and J&R Valley's negligent acts or omissions. Accordingly, Atofina is both distinguishable from and not dispositive in the instant case.

unambiguous, their terms must be given their plain and ordinary meaning.  See Nat'l Union Fire Ins. Co. v. CNA Ins. Co., 28 F.3d at 32.  Accordingly, United does not have "additional insured" status for the claims brought against United in the Garza litigation.[13] St. Paul is therefore not obligated to reimburse United for its defense costs, as United claims in the motion before the Court.[14]

### D.   United's Request for Attorney's Fees

In its first amended motion for partial summary judgment, United also seeks attorney's fees and/or statutory interest pursuant to Sections 37.009 and 38.001 of the Texas Civil Practice

---

[13]The Court notes United's argument that the presumption under Texas law is in favor of finding coverage.  (Reply, p. 5, citing Mid-Continent Cas. Co. v. Swift Energy Co., 206 F.3d 487, 500 (5th Cir. 2000)).  However, this case does not present a close question where coverage may be possible.  In this situation, the language of the United-J&R Valley Agreement and the St. Paul Policy are very clear, and United is not entitled to additional insured coverage for the negligence claims brought in the Garza litigation.

[14]In this case, United actually seeks reimbursement for defense costs for a certain period of time.  A duty to defend analysis implicates the "eight corners rule," which specifies whether an insurer has a duty to defend an insured under Texas law.  See Canutillo, 99 F.3d at 701.  Pursuant to the eight corners rule, a court may only examine "the allegations in the [underlying] complaint and the insurance policy in determining whether a duty to defend exists."  Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp., 1 F.3d 365, 369 (5th Cir. 1993).  However, in this case, for the reasons set forth above, the Court determines that United is not an additional insured for purposes of the claims brought against United in the Garza litigation.  Since United is not an "insured" under the policy with respect to the negligence claims in the underlying case, the Court does not reach the issue of whether St. Paul had a duty to defend United under the eight corners rule.

and Remedies Code, and Sections 541.152 and 542.060 of the Texas Insurance Code. (Motion, pp. 21-23). Specifically, United seeks attorney's fees that it has incurred "to date" in bringing and prosecuting the instant case before this Court, as well as statutory interest on any award it is granted, pursuant to Texas Insurance Code § 542.060. For the reasons set forth below, United's request for attorney's fees and/or statutory interest under the above-referenced Texas statutes is hereby DENIED.

With regard to Section 38.001 of the Texas Civil Practice & Remedies Code, the statute states that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: ... an oral or written contract."[15] Tex. Civ. Prac. & Rem. Code § 38.001. However, to recover attorney's fees pursuant to Section 38.001, a party must be a <u>prevailing</u> party, and the party must recover actual damages on its claim. <u>See</u> <u>Green Int'l, Inc. v. Solis</u>, 951 S.W.2d 384, 390 (Tex. 1997) ("To recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover [actual] damages."); <u>see</u> <u>also</u> <u>Mustang Pipeline Co. v. Driver Pipeline Co.</u>, 134 S.W.3d 195, 201 (Tex. 2004) (per curiam) (noting that even

_____

[15]The statute also applies to claims for rendered services, performed labor, furnished material, freight or express overcharges, lost of damaged freight or express, killed or injured stock, or "a sworn account". Tex. Civ. Prac. & Rem. Code § 38.001. However, none of these claims appears applicable to the instant case.

though the claimant had a valid claim, it "was not entitled to recover attorney's fees because it was not awarded damages on its breach of contract claim").  In this case, aside from the fact that it is not clear that United even brought a claim against St. Paul that falls within the rubric of Section 38.001, United is clearly not entitled to attorney's fees under this Section because United did not prevail on its claim or recover actual damages. Accordingly, United is precluded from seeking attorney's fees under the statute.  See Green Int'l, Inc., 951 S.W.2d at 390.

With respect to Texas Civil Practice & Remedies Code § 37.009, the statute provides that in any proceeding under the Texas Uniform Declaratory Judgments Act, "the court *may* award costs and reasonable and necessary attorney's fees as are equitable and just."  Tex. Civ. Prac. & Rem. Code § 37.009 (emphasis added). Whether to award attorney's fees in a declaratory judgment action is within the discretion of the trial court.  See Ridge Oil Co. v. Guinn Invs. Inc., 148 S.W.3d 143, 162 (Tex. 2004).  In this case, the Court determines that United, since it did not prevail on its claim in this action, is not entitled to attorney's fees under Section 37.009.

With regard to Section 542.060 of the Texas Insurance Code, that provision provides that an insurer that "*is liable for a claim under an insurance policy*" is liable to the policyholder or beneficiary for "interest on the amount of the claim at the rate of

18 percent a year as damages, together with reasonable attorney's fees." Tex. Ins. Code § 542.060 (emphasis added). In this case, as noted above, the Court does not find that United was an additional insured of St. Paul for purposes of the claims brought against United in the <u>Garza</u> litigation. Accordingly, since United was not even an additional insured, St. Paul would not be "liable for a claim" under the policy. This precludes recovery of attorney's fees and statutory interest under Texas Insurance Code Section 542.060.

Finally, the same holds true for Section 541.152 of the Texas Insurance Code, which states that a "plaintiff who prevails in an action under [the Insurance Code]" may obtain court costs and reasonable and necessary attorney's fees. Tex. Ins. Code § 541.152. Again, as set forth above, the Court does not find United to be an additional insured for the negligence claims against United in the <u>Garza</u> litigation. As United was not an additional insured, United did not "prevail" in its claim against St. Paul, and United is not entitled to attorney's fees and costs under Texas Insurance Code Section 541.152.

## V.    <u>Conclusion</u>

For the reasons set forth above, the Court hereby DENIES United's first amended motion for partial summary judgment (D.E. 28). Specifically, the Court DENIES both United's request for reimbursement from St. Paul for defense costs in the <u>Garza</u> case,

and the Court DENIES United's request for attorney's fees and/or statutory interest under certain provisions of the Texas Insurance Code and the Texas Civil Practice and Remedies Code.

SIGNED and ENTERED this 26th day of July, 2007.

_____
Janis Graham Jack
United States District Judge