# EXHIBIT A-1

# OILFIELD SERVICES TERM AGREEMENT

Contract Number UOMO402-17272-OSTA

This Agreement is entered into as of the _10_ day of _April_, 2002 by UNITED OIL & MINERALS LIMITED PARTNERSHIP ("UNITED") and _J & R Valley Oilfield Services_ ("Contractor").

In consideration for the mutual promises contained herein, the parties agree as follows:

## 1. WORK:

1.1 This Agreement shall apply to all the services and goods provided by Contractor at the request of UNITED during the term of this Agreement ("Work"), except for specific goods and services, if any, for which the parties may enter into a separate written contract.

1.2 UNITED shall not be obligated to call upon Contractor for the performance of any Work whatsoever and Contractor shall not be obligated to accept any Work request. The designation of Work to be performed and the cessation of Work shall be at the discretion of UNITED. All Work requests shall address, as a minimum, the scope, location and schedule of Work, UNITED furnished items (if any), and compensation to be paid Contractor. The performance of any Work shall be subject to and in accordance with all of the terms and conditions of this Agreement. Contractor, before starting Work, shall make a thorough inspection of the Work site to determine the difficulties and hazards incident to doing Work, and immediately notify UNITED of any such conditions found.

1.3 Contractor, at its own cost and expense, shall provide the necessary labor, services, supervision, insurance, transportation, equipment, machinery, repairs, consumable materials and supplies, tools and appliances, including but not limited to safety appliances appropriate to the performance of Work.

1.4 The parties agree that Contractor's materials, equipment, and supplies used by Contractor in the performance of Work shall be brought to the Work site in working order, kept in good repair and shall remain in Contractor's sole care, custody, operation, and control at all times.

1.5 All of Contractor's and its subcontractors' workers, employees and agents shall be experienced and qualified for their tasks. UNITED shall at all times have the right to reject from the Work any employees of Contractor or of any subcontractors whom UNITED deems unqualified or otherwise unsatisfactory for any reason and Contractor shall, at its sole cost and expense, replace those employees with ones acceptable to UNITED.

## 2. BASIS OF COMPENSATION:

2.1 Subject to all of the other provisions of this Agreement, UNITED agrees to pay Contractor in accordance with the prices stated in Contractor's applicable published price list most recently provided to UNITED at the time Work is authorized unless the parties have negotiated a different price in writing for Work or UNITED has requested and accepted a bid from Contractor for Work.

2.2 When a rate is on a daily basis, the parties shall agree on the number of hours which shall constitute a day. When less than a full day is worked, Contractor shall be paid only that proportionate part of the rate per day which the number of hours worked bears to the number of hours agreed to constitute a day or a daily minimum (if agreed to in advance), whichever is greater. All time for which payment is due Contractor shall be the actual time for which pay is due, computed to the nearest one-half hour.

2.3 Should UNITED request Contractor to provide equipment, materials, supplies or services of third party vendors or suppliers, UNITED shall reimburse Contractor for only the actual cost of such items unless a markup has been approved by UNITED.

2.4 If UNITED agrees to pay for travel time, Contractor shall identify the time on its invoices separately from other time billed. Otherwise, Work shall be considered to commence each day only when actual Work is commenced on location and to cease each day when Work ceases on location.

## 3. PAYMENT:

3.1 General. Subject to and conditioned upon full and complete compliance with all of the terms and conditions of this Agreement, UNITED agrees to make payments to Contractor at stipulated herein.

3.2 Invoices. Contractor shall submit original itemized invoices only after the invoiced Work is completed or product delivered. Each invoice shall bear Contractor's invoice number, invoice date, location of Work, UNITED's contract number, or other information as requested by UNITED's Representative, and, if appropriate, itemized reimbursable expenses (including third party charges). For Work performed on a lump sum basis, invoices shall be itemized by activity showing Work performed and percent complete. Invoices for time and material Work shall show Work performed, name and title of each individual performing Work, the dates and number of hours worked on each respective date, the hourly rates and extended totals. All invoices shall identify the items related to the charges and shall provide appropriate documentation supporting the charges (e.g. receipts; time sheets; copies of suppliers, vendors or third party invoices covering purchases of materials, supplies or equipment, etc.). Separate invoices should be submitted for each project, unless otherwise instructed by UNITED. Any supporting work or delivery ticket must be approved by the UNITED representative prior to submitting the invoice.

3.3 Delivery Tickets. For any materials or supplies delivered to location for UNITED's account or furnished by vendors for which UNITED is obligated to reimburse Contractor, delivery tickets shall be attached to and become part of Contractor's invoice for Work performed. The quantity, description, and condition of materials and supplies so furnished shall be verified and checked by Contractor, and such delivery shall be properly certified as to receipt by Contractor's representative.

3.4 Billing and Payment Address. Contractor shall submit invoices to the billing address specified by UNITED's Representative. Payment of Contractor's invoices shall be sent to the address shown on Contractor's invoice.

3.5 Payment Time. UNITED shall pay approved amounts due, for satisfactory performance of Contractor's obligations under this Agreement, within thirty (30) days after UNITED's receipt of a true and valid invoice from Contractor at the billing address specified by UNITED, subject to the provisions in Subparagraph 3.6 of this Agreement.

3.6 Disputed Amounts. If UNITED, in good faith, disputes any portion of the billing, UNITED shall notify Contractor of same and may withhold payment for the disputed portion until the dispute is resolved. UNITED's right to withhold such payment will be in addition to, and not in any way in lieu of, any other right of UNITED hereunder, including the right to raise disputes for the first time after audit.

3.7 Payments Subject to Audit. Payment of any invoice shall not prejudice the right of UNITED to question the propriety of any charges therein. All payments shall be on account only and are subject to adjustment after audit.

3.8 UNITED's Obligations. UNITED will have no direct or indirect obligation to pay, reimburse or otherwise bear any rates, taxes, fees, costs, expenses or other charges or amounts whatsoever, except as agreed to in this Agreement or in advance by written authorization; it being understood that all Work shall be performed at Contractor's sole cost, risk and expense, except as otherwise expressly agreed to in writing. Notwithstanding the prior sentence, in case of an emergency, as deemed by UNITED in its sole discretion, Contractor may be requested to perform Work upon the UNITED Representative's verbal authorization, in which event the parties agree that Work shall be performed in accordance with the provisions of this Agreement. If such emergency includes Work for which Contractor has not provided UNITED with a current price list, Contractor agrees that the prices charged UNITED shall not exceed the prices for similar services in the area where Work is performed.

3.9 Attorney's Fees. If any action at law or in equity, including an action for declaratory relief, is brought to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees from the other party, which fees may be set by the court in the trial of such action or may be enforced in a separate action brought for that purpose, and which fees shall be in addition to any other relief which may be awarded.

## 4. WARRANTIES:

4.1 Services. Contractor shall perform all Work with due diligence, in a good and workmanlike manner and in accordance with specifications provided by UNITED or, in the absence of such specifications, generally accepted professional standards and, where applicable, standards imposed by law for comparable or similar services. All materials incorporated into the Work shall be of good quality. Any errors and omissions in Work and resultant damages and deficiencies shall be promptly corrected by Contractor without charge to UNITED and without prejudice to any other remedy of UNITED provided by law.

4.2 Goods. Contractor warrants that the goods delivered under this Agreement will conform to the specifications provided by UNITED, if any, and that the goods will be merchantable, of good workmanship and material, free from defect and fit for their intended use. All guarantees or warranties of equipment or materials furnished to Contractor or subcontractors by any manufacturer are for the benefit of UNITED. Any such guarantees or warranties shall survive inspection, test and acceptance.

## 5. INDEPENDENT CONTRACTOR:

In performing under this Agreement, Contractor shall act at all times as an independent contractor. Contractor shall not make any commitment or incur any charge or expense in the name of UNITED. Contractor expressly agrees, acknowledges and stipulates that neither this Agreement nor the performance of its obligations or duties thereunder shall ever result in Contractor, or anyone employed by Contractor, being: 1) an employee, agent, servant or representative of UNITED; or 2) entitled to any benefits from UNITED, including without limitation, pension, profit sharing or accident insurance, or health, medical, life or disability insurance benefits or coverage, to which employees of UNITED may be entitled. The sole and only compensation and/or benefit of any nature to which Contractor shall be entitled are the payments provided for herein. UNITED shall have no direction or control of Contractor or its employees and agents except in the results to be obtained. The actual performance and superintendence of all Work shall be by Contractor, but Work shall meet the approval of UNITED.

6. CHANGE OR STOPPAGE: UNITED may, without any liability to Contractor, withdraw any request for Work given to Contractor at any time before commencement of Work. UNITED may also order changes to, or stoppage of, Work at any time, being liable to Contractor in the latter case for only the value of Work satisfactorily performed prior to the stoppage order.

7. AUDITS: UNITED, or its designated representative, shall have the right to inspect and audit Contractor's books, records and all associated documents, including, without limitation, documentation of expenses for gifts, entertainment and other amenities to agents or employees of UNITED to ensure compliance with the terms and conditions of this Agreement. Contractor agrees to maintain and cause its subcontractors to maintain such books, records and associated documents for a period of two (2) years from the end of the calendar year in which such costs were invoiced by Contractor or subcontractor and to make such books, records and associated documents available to UNITED at all reasonable times within such period and for so long thereafter as any dispute remains unresolved. UNITED may photocopy or reproduce any such books, records and associated documents.

8. ACCESS TO LOCATION:
 8.1 Ingress and Egress. UNITED shall secure for Contractor rights of ingress and egress to the site on which Work is performed. UNITED shall advise Contractor of any limitations or restrictions affecting ingress and egress, and Contractor shall abide by and shall have its employees, agents and subcontractors abide by such limitations or restrictions.
 8.2 Unauthorized Persons on Work Sites. Only Contractor's and its subcontractor's authorized employees and persons authorized by UNITED or governmental agencies will be permitted to enter any site where Work is to be performed under this Agreement. Contractor shall take such steps as are reasonably necessary to prevent unauthorized persons from entering a job site.
 8.3 UNITED's Access. UNITED or its representatives shall have unlimited access to the site to determine whether Work is being performed in accordance with all of the provisions of this Agreement.

9. REPORTS TO BE FURNISHED BY CONTRACTOR:
 9.1 Contractor shall keep and furnish to UNITED the following data and any additional data specifically requested by UNITED.
 9.2 Contractor shall report, as soon as practicable, all accidents or occurrences resulting in personal injury (including bodily injury) or property damage arising out of or during the performance of Work, and shall furnish UNITED with written documents, including copies of all reports made by Contractor to Contractor's insurer or to others of such accidents and occurrences.
 9.3 To the extent required by law, Contractor shall report to the appropriate state, federal or local agency or agencies any spill or discharge of a hazardous, extremely hazardous or toxic substance or other pollutant within the time provided by applicable laws, rules, codes or regulations of any federal, state or local agency or agencies. Contractor shall also notify UNITED as soon as reasonably possible of any such spill or discharge and provide copies of any written reports filed with said agencies.
 9.4 Contractor shall provide copies of all reports which Contractor files with any federal, state or local agency pertaining to Work performed under this Agreement.
 9.5 Contractor shall promptly notify UNITED upon discovery of any instance where Contractor fails to comply with the provisions of this Agreement, or where Contractor has reason to believe that data supplied by Contractor is no longer accurate or complete.
 9.6 If Work includes construction of new structures, or modifications of existing structures, Contractor shall provide as-built drawings in sufficient detail to allow UNITED to operate, maintain and repair such structures. Such drawings shall be considered Information as defined in Paragraph 15 of this Agreement.
 9.7 If Work includes delivery and installation of equipment or operating systems manufactured by other parties, Contractor shall deliver all operating and repair and maintenance manuals and warranty documentation available from the original manufacturer. All such documentation shall be delivered in a timely manner without restrictions as provided in Subparagraph 15.5 of this Agreement.

10. INSURANCE:
 10.1 General. Without limiting the indemnity obligations of Contractor or its insurers, at any and all times during the term of this Agreement, Contractor shall, at Contractor's sole expense, carry insurance with an insurance company or companies satisfactory to UNITED and authorized to do business in the jurisdiction where Work is to be performed, for the types of insurance and in minimum amounts as follows:
  a. Workers' Compensation Insurance including Occupational Disease in accordance with the laws in the jurisdiction(s) in which Work is performed.
  b. Employers' Liability Insurance with limits of not less than $1,000,000 per occurrence covering personal injury (including bodily injury) or death to any employee.
  c. Commercial/Comprehensive General Liability Insurance on an occurrence basis, including contractual liability, insuring the indemnity agreement set forth in this Agreement and the products/completed operations coverage with a combined single limit of not less than $2,000,000 covering personal injury (including bodily injury) and property damage. This insurance shall provide that a claim "in rem" be treated as a claim against the insured. ___ check if pollution coverage required, ___ check if employment practices liability coverage required.
  d. Automobile Liability Insurance covering owned, non-owned, hired and all vehicles used by Contractor, with a combined single limit of not less than $1,000,000 covering personal injury (including bodily injury) and property damage. ___ check if pollution liability coverage (MCS-90 or similar) required, ___ check if uninsured and underinsured motorist coverage required.
  e. Umbrella coverage in the amount of at least $1,000,000 plus $_____.
 10.2 Additional Insureds. UNITED and its subsidiaries, affiliated companies, co-owners, partners and joint venturers (if any), and their respective members, managers, officers, directors, agents, and employees shall be named as additional insureds in each of Contractor's policies, except Workers' Compensation; however, such extension of coverage shall not apply with respect to any obligations for which UNITED has specifically agreed to indemnify Contractor.
 10.3 Subrogation. All policies shall be endorsed to provide that underwriters and insurance companies of Contractor shall not have any right of subrogation against UNITED and its subsidiaries, affiliated companies, co-owners, partners or joint venturers (if any), and their respective members, managers, officers, directors, agents, employees, underwriters and insurance companies.
 10.4 Certificates. Contractor shall furnish Certificates of Insurance to UNITED evidencing the insurance required hereunder, and, upon request, UNITED may examine true copies of the actual policies. The certificate shall provide that the insurance is in full force and effect and that it shall not be cancelled or materially changed without thirty (30) days prior written notice to UNITED. All Certificates must contain reference to endorsements (i.e., additional insureds, waiver of subrogation, etc.) required herein.
 10.5 Premium. All policies shall be endorsed to provide that there will be no recourse against UNITED for payment of premium.
 10.6 Subcontractor's Insurance. Contractor shall require all subcontractors to obtain, maintain and keep in force during the time in which they are engaged in performing Work hereunder, adequate coverage and furnish UNITED acceptable evidence of such insurance upon request. All policies of subcontractors shall be endorsed to provide a waiver of subrogation in favor of UNITED.
 10.7 Limit of Liability. These insurance provisions in no way affect the liability of Contractor as stated elsewhere in the Agreement.
 10.8 Primary Insurance. It is hereby understood and agreed that any coverage provided to UNITED by Contractor's insurance under this Agreement is primary insurance and shall not be considered contributory insurance with any insurance policies of UNITED and its subsidiaries, affiliated companies, co-owners, partners or joint venturers (if any), and their respective members, managers, officers, directors, agents, and employees; however, Contractor's insurance shall not be primary with respect to any obligations for which UNITED has specifically agreed to indemnify Contractor.
 10.9 Deductibles. Any and all deductibles in the above described insurance policies shall be assumed by, for the account of and at Contractor's sole risk.
 10.10 Self-Insurer. In the event Contractor is a self-insurer and UNITED has consented to Contractor being a self-insurer as to any one or more of the risks as to which coverage is herein required, evidence of such consent must be in writing and approved by a representative of UNITED authorized to enter into such consent agreement.

11. INDEMNITY:
 11.1 GENERAL INDEMNITY.
  a. CONTRACTOR SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS UNITED AND ITS SUBSIDIARIES, AFFILIATED COMPANIES, CO-OWNERS, PARTNERS AND JOINT VENTURERS (IF ANY), AND THEIR RESPECTIVE MEMBERS, MANAGERS, OFFICERS, DIRECTORS, AGENTS, AND EMPLOYEES FROM AND AGAINST ALL CLAIMS, DEMANDS, AND CAUSES OF ACTION ASSERTED BY ANY PARTY (INCLUDING, BUT NOT LIMITED TO, EMPLOYEES OF CONTRACTOR AND UNITED) THAT ARISE OUT OF OR ARE RELATED TO WORK AND ARE CAUSED BY OR ARISE OUT OF CONTRACTOR'S NEGLIGENT ACTS OR OMISSIONS OR WILLFUL MISCONDUCT AND RESULT IN PERSONAL INJURY (INCLUDING BODILY INJURY), ILLNESS, DEATH OR PROPERTY LOSS OR DAMAGE, OR ANY CIVIL FINES OR PENALTIES IMPOSED BY ANY GOVERNMENTAL AGENCY, OFFICER, OR COURT OF LAW, EXCEPT TO THE EXTENT UNITED HAS ASSUMED EITHER RESPONSIBILITY FOR POLLUTION OR THE RISK OF LOSS OF UNITED'S OR

CONTRACTOR'S PROPERTY UNDER PARAGRAPHS 11 OR 12 OF THIS AGREEMENT. IF CONTRACTOR IS A SOLE PROPRIETOR OR PARTNERSHIP, THE SOLE PROPRIETOR OR THE PARTNERS, AS THE CASE MAY BE, SHALL BE DEEMED TO BE CONTRACTOR'S EMPLOYEES FOR PURPOSES OF CLAIMS ARISING IN CONNECTION WITH PERSONAL INJURY (INCLUDING BODILY INJURY) OR DEATH.

b. UNITED SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS CONTRACTOR AND ITS OFFICERS, DIRECTORS, AGENTS, AND EMPLOYEES FROM AND AGAINST ALL CLAIMS, DEMANDS, AND CAUSES OF ACTION ASSERTED BY ANY PERSON (INCLUDING BUT NOT LIMITED TO EMPLOYEES OF CONTRACTOR AND UNITED) THAT ARISE OUT OF OR ARE RELATED TO WORK AND ARE CAUSED BY OR ARISE OUT OF UNITED'S NEGLIGENT ACTS OR OMISSIONS, OR WILLFUL MISCONDUCT AND RESULT IN PERSONAL INJURY (INCLUDING BODILY INJURY), ILLNESS, DEATH OR PROPERTY LOSS OR DAMAGE, OR ANY CIVIL FINES OR PENALTIES IMPOSED BY ANY GOVERNMENTAL AGENCY, OFFICER, OR COURT OF LAW, EXCEPT TO THE EXTENT CONTRACTOR HAS ASSUMED EITHER RESPONSIBILITY FOR POLLUTION OR RISK OF LOSS OF CONTRACTOR'S PROPERTY UNDER PARAGRAPH 11 OR 12 OF THIS AGREEMENT.

c. IF A CLAIM OR CAUSE OF ACTION OF THE NATURE DESCRIBED IN SUBPARAGRAPHS 11.1.A. OR 11.1.B. OF THIS AGREEMENT ARISES OUT OF THE JOINT OR CONCURRENT NEGLIGENT ACTS OR OMISSIONS OR WILLFUL MISCONDUCT OF CONTRACTOR AND UNITED, IT IS THE EXPRESS INTENT OF THE PARTIES THAT EACH OF THEM SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS THE OTHER TO THE EXTENT OF THE INDEMNIFYING PARTY'S NEGLIGENT ACTS OR OMISSIONS OR WILLFUL MISCONDUCT.

d. IF UNITED IS HELD STRICTLY LIABLE UNDER LAW, CONTRACTOR'S DUTY TO PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS SHALL BE IN THE SAME PROPORTION THAT CONTRACTOR'S NEGLIGENT ACTS OR OMISSIONS OR WILLFUL MISCONDUCT CONTRIBUTED TO THE PERSONAL INJURY (INCLUDING BODILY INJURY), ILLNESS, DEATH OR LOSS OF OR DAMAGE TO PROPERTY FOR WHICH UNITED IS HELD STRICTLY LIABLE.

e. THE INDEMNITY OBLIGATIONS ESTABLISHED UNDER SUBPARAGRAPHS 11.1.A., 11.1.B., 11.1.C., AND 11.1.D. OF THIS AGREEMENT SHALL CONFORM TO ANY LIMITS ESTABLISHED BY APPLICABLE LAW BUT OTHERWISE SHALL BE WITHOUT MONETARY LIMIT AND WITHOUT REGARD TO WHETHER THE INDEMNITEE MAY BE STRICTLY LIABLE.

11.2 INDEMNITY FOR UNDERGROUND AND POLLUTION DAMAGE.

a. CONTRACTOR SHALL ASSUME FULL RESPONSIBILITY FOR AND SHALL PROTECT, DEFEND, INDEMNIFY, AND HOLD UNITED AND ITS CO-OWNERS HARMLESS FROM AND AGAINST ANY LOSS, DAMAGE, EXPENSE, CLAIM, FINE OR PENALTY, DEMAND, OR LIABILITY FOR POLLUTION OR CONTAMINATION, INCLUDING CONTROL AND REMOVAL THEREOF, ORIGINATING ON OR ABOVE THE SURFACE OF THE LAND OR WATER FROM SPILLS, LEAKS, OR DISCHARGES OF FUEL, LUBRICANTS, MOTOR OILS, PIPE DOPE, PAINTS, SOLVENTS, BALLAST, BILGE, SLUDGE, GARBAGE, OR ANY OTHER LIQUID OR SOLID WHATSOEVER IN POSSESSION AND CONTROL OF CONTRACTOR AND WITHOUT REGARD TO THE NEGLIGENT ACTS OR OMISSIONS OF ANY PARTY OR PARTIES.

b. UNITED SHALL ASSUME FULL RESPONSIBILITY FOR AND SHALL PROTECT, DEFEND, INDEMNIFY, AND HOLD CONTRACTOR HARMLESS FROM AND AGAINST ANY LOSS, DAMAGE, EXPENSE, CLAIM, FINE OR PENALTY, DEMAND, OR LIABILITY FOR POLLUTION OR CONTAMINATION, INCLUDING CONTROL AND REMOVAL THEREOF, ARISING OUT OF OR CONNECTED WITH WORK PERFORMED AT UNITED'S LOCATION BY CONTRACTOR HEREUNDER, AND NOT ASSUMED BY CONTRACTOR IN SUBPARAGRAPH 11.2.A. OF THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO THAT WHICH MAY RESULT FROM WELL FIRE, BLOWOUT, CRATERING, SEEPAGE, OR ANY OTHER UNCONTROLLED FLOW OF OIL, GAS, WATER, OR OTHER SUBSTANCE EXCEPT TO THE EXTENT SUCH LOSS, DAMAGES, EXPENSE, CLAIM, FINE AND PENALTY, DEMAND, OR LIABILITY MAY BE COVERED BY CONTRACTOR'S INSURANCE, AND WITHOUT REGARD TO THE NEGLIGENT ACTS OR OMISSIONS OF ANY PARTY OR PARTIES.

c. UNITED SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS CONTRACTOR FOR ANY AND ALL CLAIMS AGAINST CONTRACTOR ARISING FROM WORK ON ACCOUNT OF INJURY TO, DESTRUCTION OF, OR LOSS OR IMPAIRMENT OF ANY PROPERTY RIGHT IN OR TO OIL, GAS, OR OTHER MINERAL SUBSTANCE OR WATER IF, AT THE TIME OF THE ACT OR OMISSION CAUSING SUCH INJURY, DESTRUCTION, LOSS OR IMPAIRMENT, SAID SUBSTANCE HAD NOT BEEN REDUCED TO PHYSICAL POSSESSION ABOVE THE SURFACE OF THE EARTH AND/OR ANY LOSS OR DAMAGE TO ANY FORMATION, STRATA, OR RESERVOIR BENEATH THE SURFACE OF THE EARTH.

d. INITIATION OF CLEANUP OPERATIONS BY EITHER PARTY SHALL NOT BE AN ADMISSION OR ASSUMPTION OF LIABILITY BY SUCH INITIATING PARTY OR PARTIES.

e. EXCEPT AS OTHERWISE EXPRESSLY LIMITED IN THIS AGREEMENT, IT IS THE EXPRESS INTENT OF THE PARTIES HERETO THAT ALL INDEMNITY OBLIGATIONS AND LIABILITIES ASSUMED BY THE PARTIES UNDER THIS SUBPARAGRAPH 11.2 ARE WITHOUT MONETARY LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF (INCLUDING PRE-EXISTING CONDITIONS), THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, STRICT LIABILITY, OR WHETHER THE NEGLIGENT ACTS OR OMISSIONS BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE AND WITHOUT REGARD TO WHETHER THE CLAIM AGAINST THE INDEMNITEE IS THE RESULT OF AN INDEMNIFICATION AGREEMENT WITH A THIRD PARTY. WITH RESPECT TO SUBPARAGRAPHS 11.2.A., 11.2.B., AND 11.2.C, OF THIS AGREEMENT IT IS THE INTENT OF THE PARTIES HERETO THAT THE INDEMNITY PROVIDED FOR INCLUDES, BUT IS NOT LIMITED TO, INDEMNITY BY THE INDEMNITOR TO INDEMNIFY AND PROTECT THE INDEMNITEE FROM THE CONSEQUENCES OF INDEMNITEE'S OWN NEGLIGENT ACTS OR OMISSIONS, WHETHER THAT NEGLIGENT ACTS OR OMISSIONS ARE THE SOLE OR A CONCURRING CAUSE OF SUCH CLAIM, DEMAND OR CAUSE OF ACTION OR LOSS WITHIN THE SCOPE OF SUBPARAGRAPH 11.2 OF THIS AGREEMENT.

11.3 INDEMNITY FOR INFRINGEMENT OF PATENT RIGHTS. CONTRACTOR, AND TO THE EXTENT APPLICABLE, ITS SUBCONTRACTORS AND SUPPLIERS SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS UNITED AND ITS SUBSIDIARIES, AFFILIATED COMPANIES, CO-OWNERS, PARTNERS AND JOINT VENTURERS (IF ANY), AND THEIR RESPECTIVE MEMBERS, MANAGERS, OFFICERS, DIRECTORS, AGENTS, AND EMPLOYEES AGAINST LOSS OR DAMAGE ARISING OUT OF ANY CLAIM OR SUIT FOR MISAPPROPRIATION OF TRADE SECRET OR FOR PATENT, COPYRIGHT, OR OTHER PROPRIETARY RIGHT INFRINGEMENT ARISING OUT OF, INCIDENT TO, OR IN CONNECTION WITH (i) DELIVERY OF GOODS OR PERFORMANCE OF WORK BY CONTRACTOR, (ii) UNITED'S POSSESSION, USE, OR SALE OF GOODS, EQUIPMENT, OR MATERIALS FURNISHED BY CONTRACTOR, OR (iii) UNITED'S PRODUCTION OF COPYRIGHTED WORKS INCORPORATING OR PREPARED ACCORDING TO DOCUMENTS OR OTHER TANGIBLE MATERIALS SUPPLIED BY CONTRACTOR AND UNITED'S POSSESSION, MODIFICATION, USE, SALE, DISTRIBUTION, COPYING OR LICENSING OF SUCH DOCUMENTS, MATERIALS OR WORKS. UNITED SHALL PROMPTLY NOTIFY CONTRACTOR OF ANY SUCH CLAIM OR SUIT AND AFFORD CONTRACTOR AN OPPORTUNITY AT CONTRACTOR'S EXPENSE TO UNDERTAKE THE DEFENSE OF ANY SUCH SUIT, PROVIDED THAT, AT UNITED'S ELECTION, UNITED MAY JOIN IN SUCH DEFENSE AT ITS EXPENSE. IF CONTRACTOR REFUSES OR FAILS TO DEFEND SUCH SUIT, CONTRACTOR SHALL REIMBURSE UNITED IN FULL FOR UNITED'S COSTS AND EXPENSES IN THE DEFENSE OF SUCH SUIT INCLUDING ATTORNEYS' FEES. CONTRACTOR SHALL PAY PROMPTLY ANY JUDGMENTS OR DECREES WHICH MAY BE ENTERED AGAINST UNITED IN SUCH SUIT, AND IN EVENT OF THE GRANT OF INJUNCTIVE RELIEF, CONTRACTOR SHALL PROVIDE NON-VIOLATING INFORMATION, GOODS, EQUIPMENT, AND/OR MATERIAL EQUAL IN VALUE AND EFFICIENCY AND FAILING SO TO DO, SHALL PAY UNITED ALL DAMAGES SUFFERED BY REASON OF SUCH FAILURE.

11.4 INDEMNITY FOR NON-PAYMENT OF CONTRACTOR'S OBLIGATIONS. CONTRACTOR SHALL PROTECT, INDEMNIFY, DEFEND AND HOLD HARMLESS UNITED AND ITS SUBSIDIARIES, AFFILIATED COMPANIES, CO-OWNERS, PARTNERS AND JOINT VENTURERS (IF ANY), AND THEIR RESPECTIVE MEMBERS, MANAGERS, OFFICERS, DIRECTORS, AGENTS, AND EMPLOYEES FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION OF EVERY KIND AND CHARACTER, LIABILITY, LIENS, ENCUMBRANCES AND EXPENSES OF ANY NATURE:

a. RESULTING FROM FAILURE OF CONTRACTOR TO PAY ITS PERSONNEL FOR ALL BENEFITS AND OTHER EXPENSES APPERTAINING TO THEM, INCLUDING ALL WAGES, SOCIAL SECURITY BENEFITS, INDEMNITIES, COMPENSATION AND FRINGE BENEFITS OF WHATEVER NATURE REQUIRED BY CONTRACT WITH THEM OR BY APPROPRIATE GOVERNMENTAL BODIES OR AGENCIES.

b. RESULTING FROM CONTRACTOR'S FAILURE TO PAY FOR ANY AND ALL EQUIPMENT, MATERIALS, SUPPLIES OR SUBCONTRACTED SERVICES ORDERED, USED OR OTHERWISE INCURRED BY OR FOR CONTRACTOR IN CONNECTION WITH WORK OR INCIDENTAL THERETO.

11.5 INDEMNITY FOR NON-PAYMENT OF TAXES. CONTRACTOR SHALL PROTECT, DEFEND, INDEMNIFY, AND HOLD HARMLESS UNITED AND ITS SUBSIDIARIES, AFFILIATED COMPANIES, CO-OWNERS, PARTNERS AND JOINT VENTURERS (IF ANY), AND THEIR RESPECTIVE MEMBERS, MANAGERS, OFFICERS, DIRECTORS, AGENTS, AND EMPLOYEES FROM ANY AND ALL CLAIMS, LOSS, LIABILITY AND EXPENSE FOR INCOME, EXCESS PROFITS, AND OTHER TAXES ASSESSED OR LEVIED BY ANY COUNTRY, STATE OR ANY POLITICAL SUBUNIT THEREOF HAVING JURISDICTION OVER WORK AGAINST UNITED FOR OR ON ACCOUNT OF ANY PAYMENT MADE OR EARNED BY CONTRACTOR HEREUNDER. FURTHER, CONTRACTOR SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS UNITED AND ITS SUBSIDIARIES, AFFILIATED COMPANIES, CO-OWNERS, PARTNERS AND JOINT VENTURERS (IF ANY), AND THEIR RESPECTIVE MEMBERS, MANAGERS, OFFICERS, DIRECTORS, AGENTS, AND EMPLOYEES FROM ANY AND ALL TAXES ASSESSED OR LEVIED AGAINST OR ON ACCOUNT OF WAGES, SALARIES OR OTHER BENEFITS PAID TO CONTRACTOR'S PERSONNEL OR EMPLOYEES

OF ITS CONTRACTORS OR SUBCONTRACTORS AND ALL TAXES, LICENSES OR FEES (INCLUDING PENALTIES AND INTEREST, IF ANY ASSESSED OR LEVIED AGAINST OR ON ACCOUNT OF ANY PROPERTY OR EQUIPMENT OF CONTRACTOR.

11.6 LIMITATION OF LIABILITY. NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR SPECIAL, INDIRECT, OR CONSEQUENTIAL DAMAGES ARISING FROM OR ARISING OUT OF THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, LOSS OF PROFIT OR BUSINESS INTERRUPTIONS, HOWEVER SAME MAY BE CAUSED.

11.7 AFFIRMATIVE RIGHTS. THE TERMS AND CONDITIONS OF PARAGRAPH 11 OR ANY OTHER INDEMNITIES IN THIS AGREEMENT SHALL BE APPLICABLE ONLY BETWEEN UNITED AND CONTRACTOR AND DO NOT CREATE ANY AFFIRMATIVE RIGHTS IN THIRD PARTIES OR GOVERNMENTS.

11.8 MUTUAL INDEMNITY OBLIGATION AND RIGHTS. THE DUTY TO DEFEND SET FORTH IN THIS PARAGRAPH 11 SHALL INCLUDE BUT NOT BE LIMITED TO, PAYMENT OF ALL COSTS, ATTORNEYS' FEES, COURT AND ARBITRATION COSTS AND ANY OTHER REASONABLE EXPENSES ASSOCIATED WITH CLAIMS, DEMANDS OR CAUSES OF ACTION TO WHICH PARAGRAPH 11 OF THIS AGREEMENT IS APPLICABLE. EACH PARTY SHALL HAVE THE RIGHT, AT ITS OPTION, TO PARTICIPATE AT ITS OWN EXPENSE IN THE DEFENSE OF ANY SUIT WITHOUT RELEASING THE OTHER PARTY FROM ANY INDEMNITY OBLIGATION UNDER THIS PARAGRAPH 11.

12. RESPONSIBILITY FOR LOSS OR DAMAGE TO THE EQUIPMENT OR THE HOLE:

12.1 CONTRACTOR'S SURFACE EQUIPMENT. CONTRACTOR SHALL ASSUME LIABILITY AT ALL TIMES FOR DAMAGE TO OR DESTRUCTION OF CONTRACTOR'S SURFACE EQUIPMENT, INCLUDING BUT NOT LIMITED TO ALL TOOLS, MACHINERY AND APPLIANCES FOR USE ABOVE THE SURFACE, REGARDLESS OF WHEN OR HOW THE DAMAGE OR DESTRUCTION OCCURS AND UNITED SHALL BE UNDER NO LIABILITY TO REIMBURSE CONTRACTOR FOR THE LOSS, EXCEPT THAT UNITED SHALL REIMBURSE CONTRACTOR FOR THE LOSS IF THE EQUIPMENT IS DAMAGED OR DESTROYED IN THE FOLLOWING SITUATIONS:

a. ONSHORE AS A RESULT OF UNITED'S FAILURE TO PREPARE A SOUND SURFACE LOCATION CAPABLE OF PROPERLY SUPPORTING CONTRACTOR'S EQUIPMENT, SUCH AS A LOCATION OVER PRE-EXISTING SUBSURFACE CONDITIONS OR OBSTRUCTIONS, OR

b. OFFSHORE WHILE THE EQUIPMENT IS TRANSPORTED ON UNITED FURNISHED TRANSPORT OR HANDLED BY AN UNITED FURNISHED CRANE, OR

c. OFFSHORE DURING A LOSS OF WELL CONTROL RESULTING IN A FIRE OR DAMAGE TO THE RIG OR PLATFORM OR OFFSHORE IN A LOSS OF RIG OR PLATFORM FOR ANY OTHER REASON, OR

d. DUE TO THE SOLE NEGLIGENT ACTS OR OMISSIONS OR WILLFUL MISCONDUCT OF UNITED.

12.2 CONTRACTOR'S IN-HOLE EQUIPMENT. UNITED SHALL REIMBURSE CONTRACTOR FOR CONTRACTOR'S TOOLS AND EQUIPMENT LOST OR DAMAGED IN THE HOLE UNLESS THE LOSS IS CAUSED IN WHOLE OR IN PART BY THE GROSS NEGLIGENT ACTS OR OMISSIONS OR WILLFUL ACT OR OMISSION OF CONTRACTOR, ITS AGENTS OR EMPLOYEES.

12.3 VALUE REIMBURSED. WHEN REQUIRED BY ANY PROVISION OF THIS AGREEMENT, UNITED SHALL REIMBURSE CONTRACTOR FOR CONTRACTOR'S TOOLS AND EQUIPMENT LOST OR DAMAGED IN THE HOLE. UNITED AND CONTRACTOR AGREE CONTRACTOR'S LOSS AS USED HEREIN SHALL BE THE LESSER OF THE CURRENT REPAIR COST OF THE DAMAGED ITEM OR THE CURRENT NEW REPLACEMENT COST OF SUCH EQUIPMENT DELIVERED TO THE WELL SITE LESS DEPRECIATION AT 2% PER MONTH, BUT IN NO CASE WILL DEPRECIATION EXCEED 50% OF THE NEW REPLACEMENT COST OF THE LOST OR DAMAGED ITEM. UNITED RESERVES THE RIGHT TO REPLACE DAMAGED OR LOST IN-HOLE EQUIPMENT IN KIND. CONTRACTOR MUST FURNISH ORIGINAL INVOICES AND WRITTEN ESTIMATE OF REPLACEMENT COST FOR EQUIPMENT DAMAGED OR LOST IN-HOLE TO BE COMPENSATED AS ABOVE.

12.4 UNITED'S EQUIPMENT. UNITED SHALL ASSUME LIABILITY AT ALL TIMES FOR DAMAGE TO OR DESTRUCTION OF UNITED'S EQUIPMENT, INCLUDING BUT NOT LIMITED TO CASING, TUBING AND WELL HEAD EQUIPMENT AND CONTRACTOR SHALL BE UNDER NO LIABILITY TO REIMBURSE UNITED FOR THAT LOSS OR DAMAGE, EXCEPT WHERE SUCH LOSS IS DUE TO THE SOLE NEGLIGENT ACTS OR OMISSIONS OR WILLFUL MISCONDUCT OF CONTRACTOR.

12.5 THE HOLE. IF THE HOLE SHOULD BE LOST OR DAMAGED WHILE CONTRACTOR IS WORKING, UNITED SHALL BE RESPONSIBLE FOR THE DAMAGE TO OR LOSS OF THE HOLE, INCLUDING THE CASING THEREIN, AS WELL AS FOR THE COST OF REGAINING CONTROL OF ANY WILD WELL, UNLESS SUCH LOSS IS DUE TO THE SOLE NEGLIGENT ACTS OR OMISSIONS OR WILLFUL MISCONDUCT OF CONTRACTOR.

13. TAXES AND CLAIMS:

13.1 Contractor agrees to timely pay all taxes, licenses, and fees levied or assessed on Contractor, in connection with or incident to the performance of this Agreement, by any governmental agency for unemployment compensation insurance, old age benefits, social security, or any other taxes upon the wages or salaries paid by Contractor, its agents, employees and representatives. Contractor agrees to require the same agreement and be liable for any breach of such agreements by any of its subcontractors.

13.2 Contractor agrees to reimburse UNITED on demand for all such taxes or governmental charges, state, federal or tribal, which UNITED may be required or deem it necessary to pay on account of employees of Contractor or its subcontractors. Contractor agrees to furnish UNITED with the information required to enable UNITED to make the necessary reports and to pay such taxes or charges. At its election, UNITED is authorized to deduct all such sums for such taxes and governmental charges from such amounts as may be or become due Contractor under this Agreement or any other agreement between Contractor and UNITED.

13.3 Contractor agrees to pay all claims for labor, materials, services, and supplies furnished by Contractor hereunder and agrees to allow no lien or charge to be fixed upon the lease, the well or the land on which the work is to be drilled or on which Work is to be performed, production from the lease, or any other property of UNITED. In the event a lien, attachment or other encumbrance is filed as a result of Contractor's failure to pay for labor, materials, services or supplies, Contractor shall discharge or cause to be discharged at once or bond or otherwise secure UNITED's property and/or Work against all liens and/or attachments (including, but not limited to mechanic's and materialman's liens and/or attachments or similar legal process associated with claims brought by subcontractors, vendors, suppliers, workman, laborers, mechanics, providers of materials, machinery, or fixtures, haulers, artisans, etc.) that are filed in connection with Work. If Contractor shall fail or refuse to pay any claim or indebtedness incurred by Contractor in connection with Work, it is agreed that UNITED shall have the right to pay any such claims or indebtedness out of any money due or to become due Contractor under this Agreement or any other agreement between Contractor and UNITED. No assignment or transfer by Contractor of rights to monies due Contractor hereunder shall have any force or effect as far as UNITED's rights are concerned until all such claims and indebtedness incurred by Contractor shall have been completely liquidated and discharged.

13.4 Before payments are made by UNITED to Contractor, UNITED may require Contractor to furnish proof in a form satisfactory to UNITED that there are no unsatisfied claims for labor, materials, equipment and supplies, or for injuries to person or damage to property not covered by insurance.

13.5 Unless UNITED issues Contractor a sales and use tax exemption certificate, any applicable sales or use taxes imposed by a taxing jurisdiction(s) in connection with or incident to Work will be collected by Contractor and remitted to the appropriate taxing jurisdiction(s). Any sales or use tax to be collected and remitted by Contractor will be separately stated on all invoices.

14. LAWS, RULES, AND REGULATIONS:

14.1 The parties agree to comply with all laws, rules, and regulations, federal, state, or local, which are now or may become applicable to Work or arising out of the performance of Work.

14.2 In the event any provision of this Agreement is inconsistent with or contrary to any applicable federal, state, or local law, rule, or regulation, said provision shall be deemed to be modified to the extent required to comply with said law, rule, or regulation, and as so modified said provisions and this Agreement shall continue in full force and effect.

14.3 In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

15. CONFIDENTIALITY:

15.1 Contractor agrees to hold in confidence, and not to disclose to third parties or use for any purpose other than performance of Work, all or any part of the information (including the location and type of services performed) maps, data, plans, reports, manuscripts, procedures, schedules, drawings, specifications, results, models, computer programs or any Work product which is (i) received or ascertained by Contractor, directly or indirectly, from UNITED, its licensors or other contractors, or any member or members of the project for which the Work is performed; or (ii) originated

or otherwise acquired by Contractor, its employees, representatives, or subcontractors, in connection with, as a result of, or incident to performance of the Work ("Information"). Contractor shall secure prior written agreements from its employees, subcontractors and suppliers who will be engaged in the performance of the Work or may be exposed to Information ensuring their compliance with the provisions of Subparagraph 11.3, and Paragraphs 15 and 16 of this Agreement. Nothing herein contained should preclude Contractor from providing Information to any federal, state or local agency or agencies to the extent Contractor is required to do so by applicable laws, rules, codes or regulation of any federal, state or local agency or agencies.

15.2 Contractor shall not use UNITED's name or the name of any UNITED affiliate in any promotional material or make any publicity release regarding the Work hereunder or Information without first obtaining the written permission of UNITED.

15.3 Contractor agrees to comply with all the laws and regulations governing the export of goods and Information from the United States.

15.4 The obligations of Paragraph 15 of this Agreement shall not be affected by any other warranty, limitation, or indemnification provision of this Agreement.

15.5 All Information, whether completed or not, all copies thereof, and all copyrights therein, shall be the sole and exclusive property of UNITED for its copying, use, modification, distribution or disclosure, without accounting, in whatever way UNITED may choose, notwithstanding copyright or other restrictive legends placed thereon by Contractor, its employees, its subcontractors, or its suppliers. All Information and all copies thereof shall be delivered to, and Contractor shall transfer the whole ownership of all copyrights therein to, UNITED promptly at UNITED's request from time to time, at the termination or completion of Work, or at termination of this Agreement, whichever is earlier.

16. WORK-CONNECTED NEW DISCOVERIES, CREATIONS, AND INVENTIONS:

16.1 Contractor hereby grants and agrees to grant UNITED all right, title and interest in and to any and all things of value, including, but not limited to, all Work product, minerals, inventions (patentable or unpatentable), trade secrets, and copyrights, together with any applications for patents and the patents which may issue thereunder and registrations of copyrights, which are first discovered, created, developed, or otherwise acquired by Contractor or any of its employees, representatives, or subcontractors in connection with, as a result of, or incident to performance of the Work of which are based on Information. Upon request of UNITED, Contractor shall, at UNITED's expense, do or cause to be done all things necessary to enable UNITED to register, file, prosecute, maintain and protect trade secrets, copyrights, and applications for patents and patents issuing on such applications, and to perfect the full ownership and right, title and interest in and to all the rights and properties described hereinabove in this Subparagraph 16.1.

16.2 Contractor agrees to grant, and hereby grants to UNITED an irrevocable, paid up, nonexclusive worldwide license to make, use, sell, copy, prepare derivative works or make adaptations, modify, disclose, distribute and license under any and all patent, copyright, trade secret and other proprietary rights owned or controlled by Contractor, its parent, subsidiaries, suppliers, or subcontractors to the extent needed for making, using, selling or licensing equipment, materials or other goods based on or using documents or other tangible materials supplied by Contractor or to produce, copy, prepare derivative works based on or make adaptations of, modify, distribute and use copyrighted works based on or using such documents or other tangible materials.

17. CONFLICTS OF INTEREST: Contractor shall make all reasonable efforts to prevent occurrences of and eliminate conditions which could result in a conflict with the best interest of UNITED. Contractor shall make all reasonable efforts to prevent conflicts of interest from arising out of relationships between agents or employees of Contractor and agents or employees of UNITED. Contractor's efforts shall include the establishment of precautions to prevent Contractor's agents and employees from giving or receiving gifts or entertainment, other than an ordinary social amenity, or making any payments, loans or other consideration for the purpose of procuring business or inducing any person to act contrary to the best interest of UNITED. Contractor will document expenses for gifts, entertainment or other amenities provided to UNITED representatives.

18. DRUGS, DEADLY WEAPONS AND SEARCHES:

18.1 Contractor shall abide by and help enforce among its employees the following UNITED policy regarding drugs, deadly weapons and alcohol:

a. Using, possessing, or being under the influence of alcoholic beverages, illegal drugs, narcotics, or other controlled substances, and unauthorized drugs for which a person does not have a current prescription, while on UNITED's Premises is prohibited. Possession of deadly weapons or explosives while on UNITED's Premises is prohibited.

b. The term "UNITED's Premises" is used in its broadest sense to include all Work locations, buildings, structures and all other facilities owned or controlled by UNITED or one of its affiliated companies or otherwise being utilized for UNITED's business.

c. To ensure compliance with this policy, UNITED may conduct unannounced periodic inspections of all individuals and their personal effects while on UNITED's Premises.

d. Violation of the UNITED policy or refusal to submit to an inspection will be cause for immediate removal from UNITED's Premises.

18.2 Contractor shall, at its own cost, comply with all applicable Department of Transportation ("D.O.T.") regulations regarding drug testing of its employees and agents, and of its subcontractors' employees and agents, who perform operation, maintenance and emergency response functions at regulated pipeline facilities or as truck drivers, if required by 49 C.F.R. Parts 40, 192, 193, 195, 199, 391 and 394. Contractor shall comply with UNITED's requirements for verifying compliance with the current and any future applicable D.O.T. regulations.

19. SAFETY, HEALTH AND ENVIRONMENTAL POLICY:

19.1 Contractor shall provide continuous adequate protection of Work, UNITED's property and adjacent property, and take all necessary precautions to keep and maintain the workplace free from recognized hazards which are likely to cause death, illness or injury to persons or damage to property. Contractor shall comply and cause Contractor's employees, agents and others under Contractor's control entering upon UNITED's Premises in the performance of Work or in connection therewith to comply with all applicable safety, health, and environmental laws, rules, regulations and orders of OSHA or other applicable federal, state or local authority. This provision will not require UNITED to police Contractor's compliance with any safety, health, and environmental rules, laws, regulations or orders and shall not impose any obligation on the part of UNITED under such rules, laws, regulations or orders. Nothing contained in this paragraph shall be interpreted as enlarging the legal duty of UNITED to Contractor or Contractor's agents, employees, and others under Contractor's control or altering the status of Contractor as set forth in this Agreement.

19.2 Contractor must have all required safety equipment prior to commencement of Work. UNITED shall be under no obligation to pay Contractor any amount when Contractor's employee(s) and/or subcontractor(s) is not permitted to perform Work due to lack of safety equipment. Additionally, Contractor may be liable to UNITED for any incremental costs incurred (e.g., extra logistics costs) if immediate removal of Contractor's employee(s) and/or subcontractor(s) is required or Work is delayed due to Contractor's failure to meet all safety requirements.

19.3 If applicable to Work to be performed under this Agreement, Contractor shall ensure that its employees, agents and subcontractors have received all applicable training in the rules and procedures regarding hazardous materials, including the identification, handling, labeling, packaging, loading, transporting, unloading, storing and disposal of such materials and substances, as required by U.S. Department of Transportation Hazardous Materials Regulations, 49 C.F.R. Parts 171-177. Contractor shall maintain all required documentation to verify such training, and shall make such documents available to UNITED upon request.

19.4 Subparagraphs 19.1 and 19.2 in this Paragraph 19 are agreed to by both UNITED and Contractor to be of the highest importance. A breach or violation of any of the terms of Paragraph 19 of this Agreement by Contractor will be considered to be a material and substantial breach of this Agreement. If Contractor fails to promptly cure said breach or violation or to otherwise comply with Paragraph 19 of this Agreement, UNITED may seek removal of Contractor as provided in this Agreement and may take any other action permitted under law or by the terms of this Agreement, including its termination.

20. NON-DISCRIMINATION IN EMPLOYMENT: UNITED's Equal Opportunity Certificate, attached hereto, and all of its terms are incorporated into this Agreement by reference.

21. SEXUAL HARASSMENT: UNITED policy prohibits sexual harassment. Sexual harassment includes unwelcome sexual advances, request for sexual favors, and any other verbal or physical conduct of a sexual nature, whenever such conduct interferes with an employee's work performance or creates an intimidating, hostile, or offensive working environment. Contractor shall ensure that its employees abide by this policy. Any individual who engages in sexual harassment is subject to immediate removal from UNITED's Premises.

22. MINORITY/WOMAN-OWNED BUSINESSES: It is the policy of UNITED to take positive action toward insuring equal opportunity in the conduct of all its business activities. Accordingly, Contractor agrees to use its best efforts to include women-owned and minority-owned suppliers and subcontractors on bidders lists and where appropriate, in the awards of purchase orders and subcontracts.

23. ASSIGNMENTS AND SUBCONTRACTS:

23.1 Contractor shall not assign this Agreement, or any portion thereof, or any sums that may accrue to Contractor hereunder without UNITED's prior written consent and any such assignment or attempted assignment in the absence of UNITED's prior written consent shall be void. If any assignment by UNITED is made that materially alters Contractor's financial burden, Contractor's compensation shall be adjusted to give effect to any increase in Contractor's operating costs or Contractor's taxes as a result of such assignment.

23.2 Contractor shall not [sub]ntract any part of this Agreement without UNITED's prior written consent. Work is subcontracted, Contractor shall notify UNITED in writing of the proposed subcontracts, prior to execution, and shall furnish, at UNITED's request, copies of executed subcontract. Contractor shall have a written contract in place for each approved subcontractor prior to such subcontractor performing any Work. Contractor shall assume full responsibility for the acts or omissions of Contractor's subcontractors. All of Contractor's subcontracts, if any, for performance of Work shall contain terms and conditions substantially similar to those contained in this Agreement which protect and do not restrict UNITED's rights as set forth in this Agreement.

24. PARTIES BOUND: Subject to the provisions of Paragraph 23 above, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, but shall otherwise not create rights in persons not signatories hereto.

25. FORCE MAJEURE: Neither party shall be liable to the other for any delays due, occasioned, or caused by reason of federal, state, or local law or the rules, regulations, or orders of any public body or official purporting to exercise authority or control respecting the operations covered hereby including the use of tools and equipment, or by strikes, action of the elements, or causes beyond the control of the parties affected hereby. In case of a force majeure condition, Contractor will promptly notify UNITED and will do all things reasonably possible to remove such condition and will resume performance hereunder as soon as such condition is removed.

26. TERMINATION:
26.1 Notwithstanding any other provision of this Agreement, either party may terminate this Agreement at any time, with or without cause, by giving the other party a minimum ten (10) days written notice. As directed by UNITED in such notice, Contractor shall discontinue the performance of Work and promptly deliver to UNITED all data, information, equipment and material furnished by UNITED and all portions of any Work, completed or in process.
26.2 Upon termination, Contractor shall be entitled only to payment of authorized costs for Work requested and satisfactorily performed up to the date of termination, and UNITED shall have no further obligation to Contractor. Notwithstanding the previous sentence, on lump sum jobs UNITED shall reimburse Contractor for an amount to be determined by the parties based on a sum which shall include cost of all expended materials and labor to date of cancellation, all non-cancelable materials on order (which shall become UNITED's property), plus a prorated amount of Contractor's calculated profit based on the percentage of Work completed at the time of cancellation, but in no event to include anticipated profit for that portion of Work cancelled hereunder. No such termination or suspension shall affect any rights of UNITED against Contractor then existing or which may thereafter accrue.
26.3 The parties agree that the obligations imposed by the audit, confidentiality, ownership of information, Work-connected discoveries, creations and inventions, and indemnity provisions of this Agreement survive the termination of this Agreement.

27. TERM: This Agreement is effective as of the date first written above and shall remain in effect until ___April 30, 2004___ unless sooner terminated by either party, subject to provisions provided for herein.

28. WAIVER: None of the requirements of this Agreement shall be considered as waived by either party unless the same is done in writing, and then only by the persons executing this Agreement, or other duly authorized agents or representatives. The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as or be construed to be a waiver of any subsequent breach or violation.

29. HEADINGS: Headings used throughout this Agreement are for administrative convenience only and shall be disregarded for the purpose of construing and enforcing this Agreement.

30. GOVERNING LAW: This Agreement and all matters relating to the meaning, validity or enforceability thereof and the performance of Work hereunder shall be governed by the laws (excluding the conflicts of laws provisions) of the State of Texas.

31. CONFLICTS: In the event of a conflict between provisions of this Agreement and any attached Exhibits, or any other papers or documents, the provisions of this Agreement shall control.

Case 2:06-cv-00539   Document 17-2   Filed 01/29/2007   Page 7 of 13

32. ENTIRE AGREEMENT: This Agreement and any and all amendments and Work requests constitute the sole and only agreement of UNITED and Contractor hereto and supersede any prior understanding of written or oral agreements between the parties respecting the within subject matter. No agent, employee or representative of UNITED has any authority to bind UNITED to any affirmation, representation or warranty outside of, or in conflict with, the stated terms of this Agreement, and Contractor hereby stipulates that it has not relied, and will not rely on, such affirmation, representation or warranty. No additional or contrary terms contained in any price list, invoice, receipt, delivery ticket, field ticket, or similar document prepared by Contractor, even if signed, accepted, or approved by an agent, employee, or representative of UNITED, shall modify or add to the terms of this Agreement or create a new agreement.

33. AMENDMENT: This Agreement may not be amended except by a written amendment executed with the same formality as this Agreement and executed by the duly authorized representatives of the respective parties.

34. NOTICES:
34.1 Any notice or communication required or permitted to be given by one party to the other pursuant to this Agreement shall be in writing and shall be sent by United States registered or certified mail with return receipt requested, by telegram, telex or facsimile transmission to the recipient party at the following address:

To UNITED:

UNITED OIL & MINERALS LIMITED PARTNERSHIP
Attn: Legal Department
1001 Westbank Drive
Austin, TX 78746

To Contractor:

J & R Valley Oilfield Services
P. O. Box 310
Mission, Texas 78573

34.2 If notice is sent by telegram, telex or facsimile, it shall be deemed to be received when sent. If sent by certified or registered mail, it shall be deemed to have been received by the party to which it was addressed on the third day after it was mailed.
34.3 The facsimile transmission of any signed document shall be the same as delivery of an original. At the request of either party, parties will confirm facsimile transmitted signatures by signing an original document for delivery between the parties.

EACH OF THE PARTIES HERETO SPECIFICALLY ACKNOWLEDGES AND AGREES (A) THAT IT HAS A DUTY TO READ THIS AGREEMENT AND THAT IT IS CHARGED WITH NOTICE AND KNOWLEDGE OF THE TERMS HEREOF, (B) THAT IT HAS IN FACT READ THIS AGREEMENT AND IS FULLY INFORMED AND HAS FULL NOTICE AND KNOWLEDGE OF THE TERMS, CONDITIONS AND EFFECTS OF THIS AGREEMENT, (C) THAT IT RECOGNIZES THAT CERTAIN OF THE TERMS OF THIS AGREEMENT PROVIDE FOR THE ASSUMPTION BY ONE PARTY OF, AND/OR RELEASE OF THE OTHER PARTY FROM, CERTAIN LIABILITIES ATTRIBUTABLE TO THIS TRANSACTION OR THE PREMISES COVERED HEREBY THAT SUCH PARTY WOULD OTHERWISE BE RESPONSIBLE FOR UNDER THE LAW. EACH PARTY HERETO FURTHER AGREES THAT IT WILL NOT CONTEST THE VALIDITY OR ENFORCEABILITY OF ANY SUCH PROVISIONS OF THIS AGREEMENT ON THE BASIS THAT THE PARTY HAD NO NOTICE OR KNOWLEDGE OF SUCH PROVISIONS OR THAT SUCH PROVISIONS ARE NOT "CONSPICUOUS."

UNITED OIL & MINERALS LIMITED PARTNERSHIP

By: UOM GP, L.L.C., Its General Partner

By: _____[signature]_____

Name: ___Jon L. Glass___
               Print

Title: ___Attorney in Fact___

Contractor Name: _J+R Valley Oilfield S[ervices]_

By: _____[signature]_____

Name: _Jose. M. Flores_

Title: _Pres._

I. Equal Opportunity Clause - (Applicable to all contracts or purchase orders in excess of $10,000)

Seller shall be bound by and agree to the following provisions as contained in Section 202 of Executive Order 11246 to wit:

1. The Supplier/Contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin. The Supplier/Contractor will take affirmative action to insure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, or national origin. Such action shall include, but not be limited to the following: employment, upgrading, demotion, or transfer, recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The Supplier/Contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.

2. The Supplier/Contractor will, in all solicitations or advertisements for employees placed by or on behalf of the Supplier/Contractor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, or national origin.

3. The Supplier/Contractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice to be provided by the agency contracting officer, advising the labor union or workers' representative of the Supplier's/Contractor's commitments under Section 202 of Executive Order 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

4. The Supplier/Contractor will comply with all provisions of Executive Order 11246 of September 24, 1965, and the rules, regulations, and relevant orders of the Secretary of Labor.

5. The Supplier/Contractor will furnish all information and reports required by Executive Order 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the Contracting Agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

6. In the event of the Supplier's/Contractor's noncompliance with the nondiscrimination clauses of this contract or with any of such rules, regulations, or orders, this Purchase Order/Contract may be cancelled, terminated or suspended in whole or in part and the Supplier/Contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

7. The Supplier/Contractor will include the provisions of paragraph (1) through (7) in every Subcontract or Purchase Order unless exempted by rules, regulations or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each Subcontractor or Vendor. The Supplier/Contractor will take action with respect to any Subcontract or Purchase Order as the contracting agency may direct as a means of enforcing such provisions including sanctions for noncompliance; provided, however, that in the event the Supplier/Contractor becomes involved in, or is threatened with, litigation with a Subcontractor or Vendor as a result of such direction by the contracting agency, the Supplier/Contractor may request the United States to enter into such litigation to protect the interests of the United States.

II. Certification of Nonsegregated Facilities

Seller certifies he does not maintain or provide for his employees any segregated facilities at any of his establishments, and that he does not permit his employees to perform their services at any location, under his control, where segregated facilities are maintained. He certifies further that he will not maintain or provide for his employees any segregated facilities at any of his establishments, and that he will not permit his employees to perform their services at any location, under his control, where segregated facilities are maintained. The bidder, offeror, applicant, or subcontractor agrees that a breach of this certification is a violation of the Equal Opportunity Clause in this contract. As used in this certification, the term "segregated facilities" means, but is not limited to any waiting rooms, work areas, restrooms, and wash rooms, restaurants and other eating areas, time clocks, locker rooms, and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation and housing facilities provided for employees which are segregated by explicit directive or are in fact segregated on the basis of race, creed, color, or national origin, because of habit, local custom, or otherwise. He further agrees that (except where he has obtained identical certifications from proposed subcontractors for specific time periods) he will obtain identical certifications from proposed subcontractors prior to the award of subcontracts exceeding $10,000 which are not exempt from the provisions of the Equal Opportunity Clause; that he will retain such certifications in his files; and that he will forward the following notice to such proposed subcontractors (except where the proposed subcontractors have submitted identical certifications for specific time periods).

Notice to Prospective Subcontractors of Requirements for Certifications of Nonsegregated Facilities. A Certification of Nonsegregated Facilities, as required by the 9 May 1967 order on Elimination of Segregated Facilities by the Secretary of Labor (32 Fed. Reg. 7435, 19 May 1967), must be submitted after to the award of a subcontract exceeding $10,000 which is not exempt from the provisions of the Equal Opportunity Clause. The certification may be submitted either for each subcontract or for all subcontracts during a period (i.e., quarterly, semi-annually or annually).

III. Employer Information Report (EEO-1, Standard Form 100)

If seller has 50 or more employees and is required under Part 60 of Title 41 of the Code of Federal Regulations to file Employer Information Report, EEO-1 (Standard Form 100), Seller hereby certifies that it has done so or if not agrees that it will file such Report in accordance with the applicable instructions and will continue to file such Report unless or until Seller is not required by law or regulation to so file.

IV. Affirmative Action Compliance Programs

Seller may be required under Part 60 of Title 41 of the Code of Federal Regulations to develop a written Affirmative Action Compliance Program, if seller has 50 or more employees and the contracts of sale amount to $50,000 or more. If seller is so required, it agrees to do so no later than 120 days after the effectiveness of the first of the contracts of sale and maintain such Program until such time as it is no longer required by law and regulations.

V. Utilization of Small Business Concerns, Small Business Concerns Owned and Controlled by Socially and Economically Disadvantaged Individuals and Women-Owned Business Concerns - (Applicable to all contracts or purchase orders in excess of $10,000 except contracts for services which are personal in nature or performed entirely outside the United States, territory or possessions).

The company agrees to meet the requirements of Section 211 of Public Law 95-507 and Executive Order 12138, attempting to include the above business in subcontracting opportunities. Also, a specific negotiated plan that utilizes or documents attempts to use the above owned businesses will be written when this company has a federal contract of $500,000 or more. This plan includes dollar percentage goals to be awarded to the above owned businesses as subcontractors. Provisions are specified in Section 211 of Public Law 95-507 and E.O. 12138. (As of June 1, 1980, these rules supersede prior regulations regarding Minority Business Enterprise utilization.)

VI. Employment of the Handicapped - (Applicable to all contracts or purchase orders for $10,000 or more)

The affirmative action clause and regulations (as amended from time to time) promulgated by the Secretary of Labor, or his delegate, and in Implement Section 503 of the Rehabilitation Act of 1973, P.L. 93-112, as amended, and found in Part 60 of Title 41 of the Code of Federal Regulations, are incorporated by reference and made a part hereof, and seller agrees to comply with such affirmative action clause and regulations to the extent applicable.

VII. Disabled Veterans and Veterans of the Vietnam Era - (Applicable to contracts or purchase orders for $10,000 or more)

1. The affirmative action clause and regulations (as amended from time to time) promulgated by the Secretary of Labor, or his delegate, to implement Section 2012 of the Vietnam Era Readjustment Act of 1974, P.L. 93-508, and found in Part 60 of Title 41 of the Code of Federal regulations, are incorporated by reference and made a part hereof, and seller agrees to comply with such affirmative action clause and regulations to the extent applicable.

2. The Contractor will not discriminate against any employee or applicant for employment because he or she is a disabled veteran or veteran of the Vietnam Era in regard to any position for which the employee or applicant for employment is qualified. The Contractor agrees to take affirmative action to employ, advance in employment and otherwise treat qualified disabled veterans and veterans of the Vietnam Era without discrimination based upon their disability or veterans status in all employment practices such as the following: employment, upgrading, demotion or transfer, recruitment, advertising, layoff or termination, rates of pay or other forms of compensation and selection for training, including apprenticeship.

3. The Contractor agrees that all suitable employment openings of the Contractor which exist at the time of the execution of this Contract and those which occur during the performance of this contract, including those not generated by this contract and including those occurring at an establishment of the contractor other than the one wherein the contract is being performed, but excluding those of independently operated corporate affiliates, shall be listed at an appropriate local office of the State Employment Service System wherein the opening occurs. The Contractor further agrees to provide such reports to such local office regarding employment openings and hires as may be required.

VIII. Federal Contractor Veterans' Employment Report (VETS-100)

If Seller is required under part 61 of Title 41 of the Code of Federal Regulations to file Federal Contractor Veterans' Employment Report, VETS-100, Seller hereby certifies that it has done so or if not agrees that it will file such Report in accordance with the applicable instructions and will continue to file such Report unless or until Seller is not required by law or regulation to so file.

Agreed to and certified by:

| Name of Company | Date | Authorized signature |
|---|---|---|
| J & N Valley Oilfield Services | 4-10-2002 | Gone. M. Flores |
| Name of authorized signature | | Title of authorized signature |
| Gone. M. Flores | | Pres. |
| Address | | Telephone number |
| P.O. Box 318, Mission, Texas 78573 | | 956-581-7235 |

Case ... Document ... Filed 04/29/2007    Page 8 of 13